———

(23 Misc. Rep. 321.)

### In re ACKELS' ESTATE.

(Surrogate's Court, Chautauqua County. April, 1898.)

1. WILLS—REVOCATION—MUTILATION—EVIDENCE.

    A will, which had originally been one sheet of paper, was offered for probate, cut in two parts; one part containing the disposing part, and the other the signature, attestation clause, and signature of witnesses. During the lifetime of testatrix the disposing part of the will had been seen in the desk of the scrivener who drew it, and a year after his death both parts were found in the same desk, with paper in the scrivener's handwriting, undated and unattested, signed by testatrix, which recited, "Requests of L. C. A. for the division of her property, having given it all to M. and F. C." The circumstances of cutting the will did not appear. *Held,* that the will had not been revoked.

2. SAME—ANTE MORTEM DISPOSITION OF PROPERTY.

    The fact that testatrix disposed of her property prior to her death did not revoke her will.

Application to probate the will of Luania Cardot Ackels, deceased. Decree admitting will to probate.

Hooker & Dikeman, for proponent.
Ottoway & Munson, for contestant.

WOODBURY, S. The proponent presents two papers, which together constitute, as she claims, the last will and testament of the deceased. The two papers make and constitute one full sheet of legal cap paper. At one time these papers were one complete instrument, and, when so complete, it was the last will and testament of the deceased, properly executed, and was the free and voluntary act of a competent testatrix. These papers have been marked, respectively, Exhibits A and B. Exhibit A is the disposing part of the will, and Exhibit B contains the signature of the testatrix, the

seal, the attestation clause, and the signatures of the witnesses. Exhibit B was cut from Exhibit A. We are thus to determine whether the instrument which once constituted the will of this decedent has been canceled and revoked by the cutting off of the signature, attestation clause, and signatures of the witnesses. This is the sole question in the case, and must be determined from the evidence and circumstances adduced upon the hearing. This evidence is meager and unsatisfactory, and the disposition of the question must depend largely upon presumptions.

John C. Griswold, a resident of the town of Arkwright, in this county, was sent for by the testatrix to prepare and superintend the execution of her will. He went to her residence pursuant to such request, and prepared and superintended the execution of the instrument formed by the component parts, Exhibits A and B. Mr. Griswold was a man who frequently prepared wills and other papers for his neighbors and friends in the community of his residence, and was in the habit of taking charge of such instruments and papers for safe-keeping. It does not appear what was done with the will in question after its execution,—whether it was taken by Mr. Griswold for safe-keeping, or was retained by the testatrix. The first we learn of the whereabouts of the will, after its execution, is in the possession of Mr. Griswold, about one year after the decease of the testatrix. It is then found at his residence, in a desk in which he kept papers and legal documents, by Cassius M. Griswold, his son; and, when so found, it had been cut in two,—Exhibit B having been cut off and severed from Exhibit A, the remainder of the instrument. John C. Griswold died subsequent to this incident,. and the two parts of the will afterwards passed into the possession of the son Cassius, and from his possession were traced to this court in a proper manner. Cassius M. Griswold testifies that at the time he saw the will in his father's desk, during the lifetime of the latter, he did not find Exhibit B with the other part of the will, but only found that part of the instrument marked Exhibit A, which is the disposing part thereof. In view of the fact that at a time subsequent to the death of John C. Griswold, and when the desk in which his papers were kept passed into the custody of Cassius, Exhibit B was found in the desk with the other part of the will, we think we are not justified in finding or presuming that this part of the will had been taken away by the testatrix in her lifetime, with intent to revoke the will, and after her death had been surreptitiously returned, but that it must have been in said desk at the time Cassius saw the other part of it therein. He does not testify that he examined all of the papers in the desk at that time, or that Exhibit B was not therein. All he says is that he did not see it at that time. There is slight circumstantial evidence in the case that the testatrix disposed of her property in her lifetime, and a paper has been produced in evidence which purports to be the requests of the testatrix with respect to the disposition of her property after her decease, which contains the following recital: "Requests of Luania Cardot Ackels for the division of her property, having given it all to Marvin and Frank Cardot." This paper is in the

handwriting of John C. Griswold, and signed by the testatrix. It bears no date, is unattested, and there is no direct evidence tending to show the time of its execution. The first we learn, and the only evidence we have concerning it, is that it was found by Cassius M. Griswold in his father's desk, with Exhibit A, at the same time that he found the latter instrument there,—one year after the death of the testatrix. In view of the fact that the will, as originally executed, contained a detailed disposition of all the property of the testatrix, it may be fairly assumed that this instrument was executed after the execution of the will. This brings us to the consideration of legal principles governing the revocation of wills. The statute (2 Rev. St. c. 6, tit. 1, § 42) prescribes the manner in which a will once duly executed may be revoked, and precludes any other mode of effecting such revocation. It reads as follows:

"No will in writing except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burned, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by any other person in his presence by his direction and consent; and when so done by another person, the direction and consent of the testator and the fact of such injury or destruction shall be proved by at least two witnesses."

It is conceded that the instrument purporting to be the requests of the testatrix does not operate as a revocation of the will, by reason of the fact that it was not "executed with the same formalities with which the will itself was required by law to be executed." But it is claimed that it was revoked—First, because it was cut in two and canceled with the intent and for the purpose of revoking the same; and, second, that, the testatrix having disposed of all of her property in her lifetime, such act operated as an implied revocation of all wills previously executed. To effect the revocation of a will by cancellation, as in this case, two things must concur, namely, the actual cutting in two, and that such act be done with intent to effect the revocation. The one thing—the act which is to be done—is prescribed by the statute referred to. It must be done by the testatrix herself, or by some third person in her presence, and in the presence of two witnesses, by whom such act is to be proved. In our opinion, we are not to presume that the act of cutting, in this case, was done by the testatrix herself. We think it cannot be presumed that, having the instrument in her possession, she would cut it in two, with an intent to revoke and destroy it, and thereafter take the separate parts, and place them in the custody of Mr. Griswold. But, upon the contrary, from the circumstances in the case we are to presume that the will, at the time of its execution, was placed by the testatrix in the hands of Mr. Griswold for safe-keeping, and that he had the custody and possession thereof during the whole period of time from its execution until it was seen by his son after the death of the testatrix. We therefore conclude that the physical act of cutting and destruction was not done by the testatrix. It may not be presumed,

upon the other hand, that Mr. Griswold, having the custody of this paper, would cut it in two, or otherwise mutilate or destroy it, except by the direction or request of the testatrix; and whatever presumption may arise that the act of cutting was performed by Mr. Griswold must be coupled with the further presumption that, if he did it, it was by the direction and the consent of the testatrix; and assuming such to have been the case, or that the cutting was done by some person other than Mr. Griswold, by the direction and consent of the testatrix, such act would not operate as a revocation of the will, because no witnesses were present to prove or attest it.

We are now brought to the final contention in the case, that the will was impliedly revoked by the disposition of all the property of the testatrix in her lifetime. We are not prepared to yield to this contention: First, because we are not satisfied from the evidence, and cannot find as a fact, that the testatrix did dispose of all of her property after the making of the will, and prior to her death; and, secondly, because, if she had done so, in our opinion that should not defeat the probate of the will. Such act on her part may well operate to prevent the beneficiary from enjoying the fruits of beneficence as stated in the will, yet it does not follow of necessity that it would work a complete revocation of the will; and we think the will in such a case should be admitted to probate, leaving its effect to be determined when the legatee or devisee prefers his claim. We reach the conclusion that there was no valid revocation of the will in question, and that the instrument Exhibits A and B should be admitted to probate as and for the last will and testament of the testatrix. A decree will enter admitting such instrument to probate.

Decreed accordingly.